UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

## 03-20227

## CIV-MARTINEZ

MAGISTRATE JUDGE
DUBÉ
**NIGHT BOX**
**FILED**

JAN 3 0 2003   JC

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

SUN LIFE ASSURANCE COMPANY
OF CANADA,

Plaintiff,

vs.

DAVID M. LEVINE, AS CONSERVATOR
FOR FUTURE FIRST FINANCIAL GROUP,
INC.; AGAPE, LLC; DORSEY L. BASS;
MARY E. BASS; SUSAN COSTA; VIRGIE
HARPER; JOSEPH C. DIPRE; CLIFFORD G.
FLOYD; DOROTHY S. FLOYD; FRAN
GREENE HAYES; CLAUDIS R. HOBBS;
SHARON L. HOBBS; ROBERT E. IVES;
J.C.M. ENTERPRISES EMPLOYEE PROFIT
SHARING PLAN; JAMES B. JONES;
SAUNDRA L. JONES; KENNETH KIGER;
ELLEN T. PREWITT; LARRY W. PREWITT;
RUTH ANN SETCHELL; GARY L. SILVES;
PATRICK A. SMITH; KRISTIAN KAY
WEATHERLY; DEBORAH L. WILLIAMS;
THOMAS A. WILLIAMS; EVELYN GREENE
YARBROUGH; AND MID-OHIO
SECURITIES CORPORATION FOR THE
BENEFIT OF KRISTINA KAY
WEATHERLY, GARY L. SILVES, SUSAN H.
COSTA, AND RUTH ANN SETCHELL,

Defendants.

_____/

## COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF

Plaintiff Sun Life Assurance Company of Canada ("Sun Life") files this Complaint for

Interpleader and Declaratory Relief, and alleges:

1.      This is an action pursuant to 28 U.S.C. § 1335 for interpleader and declaratory relief concerning the death benefit proceeds payable on a life insurance policy in connection with the death of Peter H. Storrs.

2.      Sun Life is a foreign corporation registered and authorized to do business in Florida.

3.      David M. Levine is the Conservator for Future First Financial Group, Inc. ("Future First"). Future First is a Florida corporation that is engaged in the business of purchasing life insurance policies for the benefit of its investors, a practice commonly known as a viatical investment. Levine, is a citizen of Florida and, in his capacity as Conservator of Future First, has advised Sun Life of the death of Peter H. Storrs and instructed Sun Life to forward the benefits of Mr. Storrs' life insurance policy to Future First and not to the identified beneficiaries.

4.      Upon information and belief, Peter H. Storrs was, at the time of his death on July 28, 2002, a resident of Boston, Massachusetts.

5.      Upon information and belief, Agape, LLC is an Indiana limited liability company who is designated as a beneficiary of Mr. Storrs' life insurance policy.

6.      Upon information and belief, Dorsey L. Bass is a citizen of Florida who is designated as a beneficiary of Mr. Storrs' life insurance policy.

7.      Upon information and belief, Mary E. Bass is a citizen of Florida who is designated as a beneficiary of Mr. Storrs' life insurance policy.

8.      Upon information and belief, Susan Costa is a citizen of Georgia who is designated as a beneficiary of Mr. Storrs' life insurance policy.

9.      Upon information and belief, Virgie Harper is a citizen of Georgia who is designated as a beneficiary of Mr. Storrs' life insurance policy.

10.     Upon information and belief, Joseph C. DiPre is a citizen of Pennsylvania who is designated as a beneficiary of Mr. Storrs' life insurance policy.

11.     Upon information and belief, Clifford G. Floyd is a citizen of Connecticut who is designated as a beneficiary of Mr. Storrs' life insurance policy.

12.     Upon information and belief, Dorothy S. Floyd is a citizen of Connecticut who is designated as a beneficiary of Mr. Storrs' life insurance policy.

13.     Upon information and belief, Fran Greene Hayes is a citizen of Georgia who is designated as a beneficiary of Mr. Storrs' life insurance policy.

14.     Upon information and belief, Claudis R. Hobbs is a citizen of North Carolina who is designated as a beneficiary of Mr. Storrs' life insurance policy.

15.     Upon information and belief, Sharon L. Hobbs is a citizen of North Carlonina who is designated as a beneficiary of Mr. Storrs' life insurance policy.

16.     Upon information and belief, Robert E. Ives is a citizen of Florida who is designated as a beneficiary of Mr. Storrs' life insurance policy.

17.     Upon information and belief, J.C.M. Enterprises Employee Profit Sharing Plan is an employee benefit plan of J.C.M. Enterprises which is a citizen of California and who is designated as a beneficiary of Mr. Storrs' life insurance policy.

18.     Upon information and belief, James B. Jones is a citizen of Florida who is designated as a beneficiary of Mr. Storrs' life insurance policy.

19.     Upon information and belief, Saundra L. Jones is a citizen of Florida who is designated as a beneficiary of Mr. Storrs' life insurance policy.

20.     Upon information and belief, Kenneth Kiger is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy.

21.     Upon information and belief, Ellen T. Prewitt is a citizen of North Carolina who is designated as a beneficiary of Mr. Storrs' life insurance policy.

22.     Upon information and belief, Larry W. Prewitt is a citizen of North Carolina who is designated as a beneficiary of Mr. Storrs' life insurance policy.

23.     Upon information and belief, Ruth Ann Setchell is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy.

24.     Upon information and belief, Gary L. Silves is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy.

25.     Upon information and belief, Patrick A. Smith is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy.

26.     Upon information and belief, Kristian Kay Weatherly is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy.

27.     Upon information and belief, Deborah L. Williams is a citizen of Texas who is designated as a beneficiary of Mr. Storrs' life insurance policy.

28.     Upon information and belief, Thomas A. Williams is a citizen of Texas who is designated as a beneficiary of Mr. Storrs' life insurance policy.

29.     Upon information and belief, Evelyn Greene Yarbrough is a citizen of Georgia who is designated as a beneficiary of Mr. Storrs' life insurance policy.

30.     Upon information and belief, Mid-Ohio Securities Corporation is a citizen of Ohio who is designated as a beneficiary of Mr. Storrs' life insurance policy for the benefit of Kristina Kay Weatherly, Gary L. Silves, Susan H. Costa, and Ruth Ann Setchell.

31.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1335 because Sun Life issued an insurance policy having a value in excess of five hundred

dollars ($500), two or more adverse claimants are of diverse citizenship, and Sun Life has agreed to deposit into the Court's registry the full value of the insurance policy at issue.

32.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides within the Southern District of Florida.

33.     All conditions precedent to this action have occurred, have been satisfied, or have been waived.

34.     Peter H. Storrs was employed by UNICCO Service Company, a company that maintained life insurance benefits for its employees through Sun Life.

35.     Pursuant to an application dated December 14, 1992, Sun Life issued a life insurance policy on the life of Peter H. Storrs, bearing group policy number 97851 and certificate number 048344895 (the "Policy"). The total death benefit of the Policy is $314,000.

36.     On October 7, 1996, Mr. Storr assigned his Policy to The Fidelity Viatical Trust. The Policy was then held in the name of The Fidelity Trust for the benefit of Future First Financial Group, Inc. ("Future First").

37.     The Fidelity Viatical Trust appointed irrevocable beneficiaries on October 22, 1996. The designated irrevocable beneficiaries are Agape, LLC; Dorsey L. Bass; Mary E. Bass; Susan Costa; Virgie Harper; Joseph C. Dipre; Clifford G. Floyd; Dorothy S. Floyd; Fran Greene Hayes; Claudis R. Hobbs; Sharon L. Hobbs; Robert E. Ives; J.C.M. Enterprises Employee Profit Sharing Plan; James B. Jones; Saundra L. Jones; Kenneth Kiger; Ellen T. Prewitt; Larry W. Prewitt; Ruth Ann Setchell; Gary L. Silves; Patrick A. Smith; Kristian Kay Weatherly; Deborah L. Williams; Thomas A. Williams; Evelyn Greene Yarbrough; and Mid-Ohio Securities Corporation for the benefit of Kristina Kay Weatherly, Gary L. Silves, Susan H. Costa, and Ruth Ann Setchell.

38.     On August 9, 2002, the Circuit Court of the Seventh Judicial Circuit in and for St. Johns County, Florida issued an order appointing David M. Levine as Conservator of Future First.  In the order, the Court authorized the Conservator to, among other things, take possession of Future First's property and assets.  A copy of the Circuit Court's Order is attached as Exhibit "A."

39.     The Conservator believes that the benefits of the Policy are assets of Future First, and he has demanded that Sun Life pay the benefits of the Policy directly to Future First.  A copy of the Conservator's January 24, 2003 demand letter is attached as Exhibit "B."

40.     Accordingly, the Irrevocable Beneficiaries, by virtue of their status,  and the Conservator each claim entitlement to the Policy benefits.

41.     Because of these conflicting claims, Sun Life is in great doubt as to who is entitled to be paid the Policy benefits.

42.     Sun Life has no beneficial interest in the benefits to be paid pursuant to the Policy and is merely a stakeholder.  Sun Life files this action to be relieved of multiple liability on the conflicting claims of the Irrevocable Beneficiaries and the Conservator to the Policy benefits.

43.     Sun Life agrees to pay into the Court registry the Policy benefits that are in dispute and will abide by the judgment of this Court, in order that the Defendants may interplead and settle their claims.

44.     Sun Life has retained the law firm of Steel Hector & Davis LLP to represent it in this action and has agreed to pay reasonable attorney's fees and costs.  Sun Life is entitled to recover its attorney's fees and costs pursuant to applicable law.

Wherefore, Sun Life requests:

A.      That Sun Life be permitted to pay into the registry of this Court the death benefit

        proceeds payable on insurance policy number 97851 and certificate number

        048344895 in the amount of $314,000.00, and providing that any fees charged by

        the Clerk of Court or accrued in this account by operation of this Court's registry

        requirements shall be paid from the deposit and shall not be the separate

        responsibility of any party to this action;

B.      That each of the Defendants be restrained and enjoined during the pendency of

        this action and permanently from instituting any action against Sun Life for

        recovery of the amount in dispute or any part thereof;

C.      That the Defendants be required to interplead and settle between themselves their

        rights and/or claims to the death benefit proceeds described above and that Sun

        Life be discharged from all liability for all payments made into the registry of this

        Court;

D.      That Sun Life recover its costs and attorney's fees necessitated by this

        interpleader action; and

E.      That Sun Life have such other and further relief as this Court deems just and

        proper.


Dated January 30th, 2003

STEEL HECTOR & DAVIS LLP
Attorneys for Sun Life Assurance Company
200 South Biscayne Boulevard
Suite 4000
Miami, Florida  33131-2398
Telephone:  305-577-7000
Facsimile:  305-577-7001
Email:)        pkramer@steelhector.com

By:

Peter M. Kramer, P.A.
Florida Bar No.  438250
Eduardo S. Lombard
Florida Bar No.  0153590

EXHIBIT "A"

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

Public Records of
St. Johns County, FL
Clerk# 02-046617
O.R. 1797 PG 743
09:31AM  08/12/2002
REC $0.00    SUR $0.00

CASE NO. CA02-1598
DIVISION 55

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
    Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
    Respondent.

_____/

## ORDER APPOINTING CONSERVATOR

THIS MATTER came to be heard by the Court upon the Emergency Petition for Appointment of

Conservator filed by the Petitioner, State of Florida, Department of Insurance (hereinafter "DEPARTMENT")

against the Respondents, Future First Financial Group, Inc. (hereinafter "FUTURE FIRST") and Life Settlement

Services Corp. (hereinafter "LIFE SETTLEMENT").  At the hearing on the 6th and the 7th day of August, 2002, the

Petitioner was represented by Michael H. Davidson, Esquire and the Respondents were represented by Christopher

A. White, Esquire.  The Court heard and considered the testimony of Janice S. Davis a Regulator and Field

Examiner with the Florida Department of Insurance.  The Court also received and reviewed all the documentary

evidence and heard and considered argument of counsel.

    The Department is an agency of the State of Florida charged with licensing and regulating viatical

settlement providers in the State of Florida.  The Department has the authority to regulate viatical settlement

providers pursuant to Florida Statute Chapter 626.99285, Florida Statutes Chapter 624.310, Florida Statutes Chapter

626.901 and Florida Statutes Chapter 626.989.  The Respondent, Future First, is a Florida corporation located and

doing business in St. Johns County, Florida and is a revoked viatical settlement provider.  It's license was revoked

by order of the Department entered on May 17, 2002.  Section 626.9915(1) Florida Statutes provides and requires

OR1797PG0744

that a revoked viatical insurance provider conclude its operations and cease and desist its business affairs at the time

of the revocation.  Because of the revocation, Future First can no longer legally solicit, negotiate, advertise or

effectuate new viatical contracts and has to immediately proceed to conclude its affairs and the business it was

transacting at the time of the revocation.  The Department, pursuant to Florida Statute 626.9915, retains continuing

jurisdiction over Future First until all its viatical contracts have been fulfilled, or canceled or have expired and its

continued maintenance and service of those viatical policies is subject to the Department's approval.

   According to the testimony and exhibits offered through Ms. Davis, Future First records revealed

that Future First: (1) has continued  to operate as usual since its license revocation rather than cease business and

conclude its affairs as required pursuant to the Florida law and (2) has insufficient funds in its disclosed accounts

to continue to maintain the premiums for the policies purchased by its investors.  Additionally, Ms. Davis testified

that a review of the records provided to her from Future First show that Future First collected approximately $400

million in capital from approximately 9400  investors and purchased approximately $318 million worth of insurance

with approximatley 2600 policies.

   Future First's records reveal that a small number of these policies are what the industry terms as "paid

up policies", the others require premimums to be paid on a monthly or other regular basis in order for them to remain

in force.

   The Final Order issued by the Department on May 17, 2002 revoking Future First's license stated

as follows:

> Respondent's, Future First Financial Group, Inc., license shall be revoked pursuant
> to Section 626.9914, Florida Statutes immediately upon entrance of this Final Order.
> As a condition of said revocation, Respondent must proceed immediately following
> effective date of the revocation, to conclude the affairs it is transacting under its
> license.  The provider may not solicit, negotiate, advertise, or effectuate new
> contracts.  The Department retains jurisdiction over the provider until all contracts
> have been fulfilled or canceled or have expired.  Respondent may continue to
> maintain and service viatical policies subject to the approval of the Department.

2

The purchase agreement between Future First Financial Group, Inc. and each investor provided in pertinent part as follows: "Purchaser is not required to make any payment other than the purchase price" and " Trustee will pay insurance policy(ies) premiums until actual maturity(ies) out of Fidelity Viatical Special Trust Account." Ms. Davis testified that her review of the bank records show that there were insufficient funds in the Fidelity Viatical Special Trust Account to continue payment of the required premiums on all of the policies purchased by investors.

Subsequent to the Order of the Department revoking its license, Future First, entered into a service agreement with Life Settlement Service Corp to service the policies of Future First investors without the permission of the Department.  This agreement was entered into by Future First on the 21ˢᵗ day of June, 2002 and provided that Life Settlements would, among other things, review policies, monitor viators. conduct mailings, advertising, trustee provisions, legal referrals, file storage, medical life expectancy, and office space, all relative to the policies and investor activities for viatical settlement policy of Future First.  This is in clear contradiction of and an attempt to circumvent the Department's Order Revocation of May 17ᵗʰ provisions of Florida Statutes Chapter 626.

In addition, the documents provided by Future First and Life Settlements to the Department included two (2) pieces of correspondence, one dated July 8, 2002 and the other dated July 18, 2002.

In the July 8, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future First Financial Group, the letter provided in pertinent part,

> "The Fidelity Trust has advised Service Corp the Premium Escrow account has insufficient funds to make future premium payments on insurance policies.  Premium payments must be made according to policy requirements in order to insure the policy stays in force and in good standing. Service Corp. management and staff has six years of experience in servicing over 9000 investors monthly.
>
> These circumstances have a solution, but there is a very time sensitive deadline.  You must act now or your policy investment will lapse, resulting in an unnecessary loss.  The Trust account that disburses premium payments is prepared to facilitate all payments.
>
> Please provide a check payable to the *Fidelity Trust Special Account* for premium payments, and a check payable to *Life Settlement Service Corp* for servicing and monitoring.  See enclosed invoice."

The July 18, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future

OR1797PG0746

First Financial Group, provided in pertinent part,

> "Enclosed please find an invoice that requires your prompt attention. We understand that you may or may not have already received an invoice regarding this investment. We urge that you carefully review the enclosed statement regarding this investment **only**.

> This may be one of several investments you have, which will result in several invoices for individual policies. If you have several policies that you have investments on, you will receive a statement for each of those as we find premiums due. Based on our current research, these premiums are due immediately in order to keep this policy active.

> Pleased be advised that time is of the essence in order to keep the insurance policy active."

These letters clearly show that Future First was attempting to continue its viatical settlement obligations through a third party, namely Life Settlements, and was not concluding its affairs as ordered, but was soliciting additional funds through a third party from investors in contradiction of its agreement with those investors. The relationship between Future First and Life Settlement is not at an arm's length, and the agreement was approved by the Department.

From the testimony before this Court it is clear that (1) Future First had its license revoked for its failure to follow the laws and regulations regarding viatical insurance settlements by the Florida Department of Insurance on May 17, 2002; (2) the Order of revocation specifically provided that the "Respondent must proceed immediately.....to conclude the affairs it is transacting under its license" and that the "Department retains jurisdiction over the provider until all contracts have been fulfilled or canceled or have expired"; (3) the documents provided by Future First reveal and the testimony of Ms. Davis confirms that Future First did not attempt to "immediately" conclude the affairs it was transacting; (4) there are insufficient funds to insure payments for policy premiums for which Future First was responsible. (Parenthetically, in the event there are other funds available to Future First, those funds and the sources of those funds, were not disclosed in the documents provided to the Department.); (5) subsequent to the revocation of the license of Future First, Future First negotiated and executed a servicing contract with the Respondent, Life Settlement, and that members of the management of Future First positioned themselves in management positions for Life Settlement Services Corp; and (6) Life Settlement has solicited funds from Future

4

OR1797PG0747

First investors.

It is clear from the testimony presented by Ms. Davis and the documents and other evidence presented to the Court, that the investors of Future First are in jeopardy of losing their entire investment if Future First is allowed through Life Settlement to control the investments and the payment of the policy premiums. This Court will not allow Future First and its management team, who were responsible for putting its investors in a perilous financial situation, to again subject these same investors to possible further financial peril and losses by assuming control and soliciting funds through a newly formed corporation. Accordingly, this Court finds that it is evident under the circumstances of this case, considering all of the evidence presented, that a Conservator should be appointed for Future First Financial Group, Inc. in order to prevent irreparable loss, damage, or injury to investors in viatical and/or life settlement contracts effectuated by Future First Financial Group, Inc.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that David Levine, of Tew Cardenas Rebak Kellogg Lehman DeMaria Tague Raymond & Levine, L.L.P. (Conservator), is hereby appointed Conservator of Future First and of its assets and property as follows and with the following powers and authority:

1. The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:

(a) ll life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or Investors, or any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)

(b) all assets of Future First including, but not limited to: computer hardware, databases, software, Investor and viator files relating to the Policies, all accounting and financial records including those pertaining to

premium payments and receipt and distribution of proceeds on the Policies, any deposits of cash, bonds or guarantees, filing cabinets, office supplies, any leases of office space, and telephone systems;

(c)   all premium reserve accounts, bank accounts, and any other depository accounts, wherever situated, into which Future First Investor funds or proceeds from Future First Policies have been deposited;

(d)   any trust, including The Fidelity Trust, and the assets thereof, as well as any predecessor or successor trust, or any affiliated trust set up pertaining to the business of Future First;

(e)   all rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures, and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of Future First, wherever situated; and

(f)   all other assets and property acquired with the proceeds of funds or assets of Future First, including The Fidelity Trust (Paragraphs 1(a)-(f) collectively referred to as Conservatorship Assets).

**IT IS FURTHER ORDERED** that the Conservator is given directions and authority to accomplish the following:

2.   To manage all Conservatorship Assets pending further action by this Court including, but not limited to, the evaluation of the Policies, and to take the necessary steps to protect the Investors' interests including, but not limited to, the liquidation, sale, or financing of the Policies to institutional buyers and/or financiers, and the assessment to Investors of future premium payments;

3.   to receive and collect any and all sums of money due or owing on the Policies to Future First or its agents whether the same are due or shall hereinafter become due and payable;

4.   to seek the return of any cash, bond, or guarantee on deposit with any regulatory agency or other entity on behalf of Future First or its agents;

5.   to make such payments and disbursements as may be necessary and advisable for the preservation of the Conservatorship Assets and as may be necessary and advisable in discharging his duties as

Conservator including, but not limited to, the timely payment from available funds or proceeds of financing of all premiums for Policies that have not yet matured;

6.     to monitor the viators of the Policies by tracking the location of the viators and periodically checking the health of the viators;

7.     to receive notice of the death of viators, file death claims on the viators, and collect the proceeds paid on the Policies as such mature;

8.     subject to further order of the Court, to disburse to Investors and other creditors of Future First the proceeds paid on matured Policies, and the proceeds of other Conservatorship Assets collected by the Conservator;

9.     to give notice to Investors, at their last-known mailing address, of this Conservatorship Order within thirty (30) days of the entry of this Order and to establish a method by which Investors may obtain periodic updates;

10.    to retain or discharge attorneys, accountants, computer consultants, trustees, and other persons as may be advisable or necessary to the exercise of the duties of the Conservator subject to application to and approval by the Court;

11.    to employ, compensate, or discharge office staff;

12.    to open and inspect any and all mail and/or deliveries, and to notify any insurance company or third party administrator and the United States Postal Service to effect the forward delivery of any mail related to the Conservatorship Assets to a mail depository under the control of the Conservator;

13.    to investigate the manner in which the affairs of Future First were conducted and institute such legal actions and legal proceedings, for the benefit and on behalf of Future First and Investors and other creditors, as the Conservator deems necessary against those individuals, corporations, partnerships, associations, and/or unincorporated organizations, which the Conservator may claim to have wrongfully, illegally, or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from Investors

7

in Future First including against Future First and the officers, directors, shareholders, employees, affiliates, and any persons acting in concert or participation with them, or against any transferees of monies or other proceeds directly or indirectly traceable from Investors to Future First; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute sections 726.101, et seq., or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

14.    to pursue any and all causes of action belonging to Future First;

15.    to present to this Court, within thirty (30) days of the date of this Order, a preliminary report reflecting the status of the Conservatorship, upon receipt of which the Court may institute such further proceedings as the Court deems advisable.  Thereafter, unless otherwise ordered by the Court, commencing on January 15, 2003, the Conservator shall file quarterly reports with the Court apprising the Court of its progress;

16.    to defend, compromise, or settle legal actions, including the instant proceeding, wherein Future First or the Conservator is a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where Future First is a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of Future First, the Conservator may file appropriate pleadings in his discretion.  The Conservator may waive any attorney-client, accountant-client, or any other privilege held by Future First;

17.    to assume control of, and be named as authorized signatory for, all accounts in any bank, brokerage firm, financial institution, or other depository which has possession, custody, or control of any assets or funds, or the proceeds, wherever situated, of Future First and, upon order of this Court, of any other entities;

18.    to make or authorize such payments and disbursements for customary operating expenses from the funds and assets taken into control or thereafter received by the Conservator, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging his duties as Conservator;

OR1797PG0751

19.   to sell assets or property including Conservatorship Assets, with the approval of the Court:

20.   to accept, continue, reject, cancel or negotiate modifications to excutory contracts and unexpired leases as allowed by the terms thereof or with Court approval;

21.   to exercise those other powers necessary to implement this Conservatorship pursuant to the orders and directives of the Court.

**IT IS FURTHER ORDERED** as follows:

22.   Future First and its directors, officers, shareholders, agents, and other persons who are in custody or control of Conservatorship Assets, including The Fidelity Trust and Life Settlement Services Corp. (Life Settlement), shall immediately execute such documents as may be necessary and take any other action as necessary to immediately transfer the ownership and beneficial rights to the Conservatorship Assets to the Conservatorship.

23.   All banks, brokerage firms, financial institutions, and other business entities and individuals which have possession, custody, or control of any assets, funds, or accounts, in the name of, or for the benefit of, Future First shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts. Such banks, brokerage firms, financial institutions, and other business entities and individuals shall also identify to the Conservator whether any additional accounts exist that appear to be related to or associated with Future First; and, if such accounts do exist, such banks, brokerage firms, financial institutions, and other business entities and individuals shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.

24.   Unless and as authorized by the Conservator, no person or entity, including Future First and

9

its principals, shall take any action, nor purport to take any action, in the name of or on behalf of Future First.

25.   Future First, Life Settlement and The Fidelity Trust and their principals, officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Conservator including, if deemed necessary by the Conservator, appearing for deposition testimony and producing documents, upon five (5) business days  notice (which may be sent by facsimile), and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Conservator of the funds, assets, premises, and choses in action described above.

26.   All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:

(a)   all Conservatorship Assets in the possession of or under the control of any one or more of them; and

(b)   all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.

27.   All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in active concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal and state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of

this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator.

28.    The Conservator is authorized, without breaching the peace, to enter and secure any premises under the control of Future First or its agents, wherever located or situated, in order to take possession, custody or control of, or identify the location or existence of, any Conservatorship Assets.

29.    The Conservator and his professionals and consultants may apply to the Court for compensation, from time to time, in a reasonable sum to be determined by the Court and from such sources as approved by the Court and for reimbursement for reasonable expenses incurred by them in connection with their duties. The fees and expenses of the Conservator and for professionals and consultants shall have priority over any other claims made against Future First.

30.    Except by leave of Court during the pendency of this Conservatorship, all creditors and other persons or entities seeking money, damages or other relief from Future First or its agents, and all others acting on behalf of any such creditors or other persons or entities, including sheriffs, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees, are hereby stayed and restrained from doing any act or thing whatsoever to interfere with Future First or its agents, in an orderly transfer of the Conservatorship Assets or the Conservator or to the possession of or management by the Conservator of the Conservatorship Assets, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this Court over Future First.  This Conservatorship Order shall not stay or restrain any pending or future action whatsoever by any government agency or any representative on behalf of any government.  All sheriffs, marshals, police officers and other law enforcement officials shall assist the Conservatorship in enforcement of this court's orders.

31.    With the Court's prior approval, the Conservator is solely and fully authorized to proceed with

OR1797PG0754

any filing he may deem appropriate under the United States Bankruptcy Code as to Future First.

32.   Title to all property, real or personal, all contracts, rights of action and all books and records of Future First, wherever located within or without this state, is vested by operation of law in the Conservator until further order of the Court.

33.   Upon request by the Conservator, any company providing telephonic services to Future First shall provide a reference of calls from the number presently assigned to Future First to any such number designated by the Conservator or perform any other charges necessary to the conduct of the Conservatorship.

34.   Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Future First shall maintain such service and transfer any such accounts to the Conservator unless instructed to the contrary by the Conservator.

35.   The United States Postal Service is directed to provide any information requested by the Conservator regarding Future First, and to handle future deliveries of Future First's mail as directed by the Conservator.

36.   No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets of Future First to the Conservator's control without the permission of this Court.

37.   No bond shall be required in connection with the appointment of the Conservator and persons employed or retained by the Conservator.  Except for any act of gross negligence, the Conservator and his retained professionals and consultants shall not be liable for any loss or damage incurred by Future First or by the Conservator's officers, agents, or employees, or any other person, by reason of any act performed or omitted to be performed by them in conjunction with the discharge of their duties and responsibilities hereunder.

38.   Service of this Order shall be sufficient if made upon Future First's attorneys or principals by facsimile, hand-delivery, overnight courier, or United States mail.

39.   In the event that the Conservator discovers that funds of Future First or of its Investors have

12

been transferred to other persons or entities, the Conservator may apply to this Court for an Order giving the Conservator possession of such funds and, if the Conservator deems it advisable, extending this Conservatorship over any person or entity holding such funds.

40. Immediately upon entry of this Order, the Conservator may take depositions upon oral examination of, and obtain the production documents from, parties and non-parties subject to five (5) business days notice. In addition, immediately upon entry of this Order, the Conservator shall be entitled to serve interrogatories and requests for admission, which shall be responded to within twenty (20) calendar days of service. Service of discovery requests shall be sufficient if made by facsimile or overnight courier; depositions may be taken by telephone or other remote electronic means.

41. Life Settlement and The Fidelity Trust shall immediately provide the following information to the Conservator:

(a) An accounting (including receipt and disbursement) of all funds received from Future First Investors, Future First, The Fidelity Trust, or Life Settlement, and all financial information and records pertinent thereto.

(b) All records regarding the Policies, including servicing of or collections on the Policies.

42. Until notified in writing by the Conservator, or until it properly exercises any contractual option to terminate servicing, Life Settlement shall continue servicing the Policies and provide daily written reports to the Conservator regarding that servicing. All fees collected and to be collected for such servicing of the Policies shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

43. Any and all death benefit payments on the Policies received by Life Settlement, The Fidelity Trust, or their successors or assigns shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

44. Because of their solititation of funds from Future First Investors and Future First until notified

13

OR 1797 PG0756

otherwise in writing by the Conservator, Life Settlement, The Fidelity Trust, Future First, and/or Charles R. Sussman shall remit any monies from Investors, received pursuant to solicitation for premium payments, to the applicable insurer, and provide a daily written report thereof to the Conservator. Absent other agreement between the Conservator and Mr. Sussman/ Fidelity Trust, the Conservator shall assume premium payment responsibilities currently being dishcarged by Mr. Sussman/ Fidelity Trust by a date no later than twenty (20) days of the date of this Order. During this transition period Mr. Sussman/ Fidelity Trust will continue to be reasonably compensated for their services.

45. Life Settlements shall deliver to the Conservator all Policies and Policy account and payment information relative to the Policies, including identification of all investors, their addresses and other information necessary for the Conservator to determine the payment history, any current payments due, the name of the investors associated with each Policy of Future First.

46. Life Settlement, Future First, The Fidelity Trust, and Charles R. Sussman, shall immediately provide to the Conservator a copy of any notice, in their possession, custody, or control, from any insurer, of lapse, cancellation, or other indication of Policy termination, or of any notice suggesting an insurer's intent to terminate Policy coverage by reason of lapse, cancellation, or otherwise. For purposes of this Paragraph, immediate shall mean no later than twenty-four (24) hours after execution of this Order or receipt of such notice by the foregoing person or entities.

47. This Court retains jurisdiction over the parties and subject matter of this action to ammend or modify this Order to either enlarge or restrict the activities of the Conservator and for all other purposes.

**DONE AND ORDERED** this 9th day of August, 2002, at St. Augustine, St. Johns County, Florida.

**J. MICHAEL TRAYNOR**
**CIRCUIT COURT JUDGE**

Copies to:
Michael H. Davidson, Esq.
Christopher A. White, Esq.

14

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO. CA02-1598
DIVISION 55

Public Records of
St. Johns County, FL
Clerk# 02-047091
O.R. 1798 PG 426
03:50PM  08/13/2002
REC $0.00   SUR $0.00

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
     Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
     Respondent.
                          /

### ORDER CORRECTING CLERICAL ERROR

     This matter came to be considered by the Court upon its own motion pursuant to Florida Rule of Civil Procedure 1.540 and the Court finding that the Order Appointing Conservator in the above styled matter which was entered by this Court on 9th day of August, 2002 contained a clerical error on page 4 and that same should be corrected, it is therefore

     **ORDERED AND ADJUDGED** that on page 4, in the second paragraph which begins with the words " These letters clearly show...", the last sentence should read as follows: " The relationship between Future First and Life Settlement is not at arm's length,  and the agreement was **not** approved by the Department.".

     **DONE AND ORDERED** this 13th day of August, 2002, at St. Augustine, St. Johns County, Florida.

                            **J. MICHAEL TRAYNOR**
                            **CIRCUIT COURT JUDGE**

Copies to:
Michael H. Davidson, Esq.
Christopher A. White, Esq.

EXHIBIT "B"

**DAVID M. LEVINE, CONSERVATOR**
for Future First Financial Group, Inc.
Suite 2600
201 S. Biscayne Boulevard
Miami, FL 33131-4336
Telephone: (305) 536-1112
Facsimile: (305) 536-1116

January 24, 2003

**Via U.S. Mail and Facsimile (305) 577-7001**
Peter M. Kramer, Esq.
Steel Hector & Davis LLP
200 South Biscayne Blvd, Suite 4000
Miami, FL 33131-2398

RE:     Insurer:  Sun Life Assurance Company of Canada
        Insured: Peter H. Storrs
        Policy / Contract No:  97851

Dear Peter:

On behalf of David M. Levine, Conservator, this office previously notified Sun Life Assurance Company of Canada ("Sun Life") of the death of the above insured. As you are representing Sun Life, we wanted to notify you that as Conservator, this office is in the process of completing the required claims package for the above-referenced policy. We hereby request that the processing of this claim be handled through our office in Jacksonville, FL at the following address: Future First Conservatorship, 1301 Riverplace Blvd., Suite 1700A, Jacksonville, FL 32207, telephone: (904) 398-3653. We request that all questions regarding the processing of this claim be directed to our Jacksonville office as well. Additionally, we request that the death benefit for this policy be sent to our Jacksonville, FL office upon completion of the processing of this claim, and not to the beneficiaries indicated in your records. The basis for our requests to process this claim and collect the death benefit is described below.

On August 9, 2002, an Order Appointing Conservator for Future First Financial Group, Inc., of Ponte Vedra, Florida ("Future First"), was entered by the 7th Judicial Circuit Court, In and For St. Johns County, Florida, by The Honorable J. Michael Traynor. A copy of the Order and the amendment thereto, issued on August 14, 2002, is attached for your reference.

The Order appointed David M. Levine as Conservator of Future First and authorized the Conservator to take immediate possession of all Conservatorship Assets. Specifically, Paragraph 1(a) of the Order states in pertinent part,

> 1.      The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:

> (a) all life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or Investors, or any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)....

The above-referenced policy was held in the name of The Fidelity Trust for the benefit of Future First Financial Group investors. Accordingly, as a Conservatorship Asset, the Conservator is authorized by the Order to process the claim and collect the death benefit from this policy.

In addition to the language of Paragraph 1(a) of the Order, cited above, these requests are consistent with the provisions of Paragraphs 26 and 27 of the Order, which read as follows:

26.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies**, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:

    (a)  all Conservatorship Assets in the possession of or under control of any one or more of them;
and
    (b)  all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.

27.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies**, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator. (emphasis added.)

If you need any additional information, please do not hesitate to contact me at our Jacksonville office at the address above, or by telephone at (904) 398-3653, or at my Tallahassee office at (850) 841-7770.

Very truly yours,

John L. Brennan III

Cc:    Michael M. Bajalia, Esq.

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

Public Records of
St. Johns County, FL
Clerk# 02-046617
O.R. 1797 PG 743
09:31AM  08/12/2002
REC $0.00    SUR $0.00

CASE NO. CA02-1598
DIVISION 55

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
        Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
        Respondent.
_____/

ORDER APPOINTING CONSERVATOR

THIS MATTER came to be heard by the Court upon the Emergency Petition for Appointment of

Conservator filed by the Petitioner, State of Florida, Department of Insurance (hereinafter "DEPARTMENT")

against the Respondents, Future First Financial Group, Inc. (hereinafter "FUTURE FIRST") and Life Settlement

Services Corp. (hereinafter "LIFE SETTLEMENT").  At the hearing on the 6th and the 7th day of August, 2002, the

Petitioner was represented by Michael H. Davidson, Esquire and the Respondents were represented by Christopher

A. White, Esquire.  The Court heard and considered the testimony of Janice S. Davis a Regulator and Field

Examiner with the Florida Department of Insurance.  The Court also received and reviewed all the documentary

evidence and heard and considered argument of counsel.

The Department is an agency of the State of Florida charged with licensing and regulating viatical

settlement providers in the State of Florida.  The Department has the authority to regulate viatical settlement

providers pursuant to Florida Statute Chapter 626.99285, Florida Statutes Chapter 624.310, Florida Statutes Chapter

626.901 and Florida Statutes Chapter 626.989.  The Respondent, Future First, is a Florida corporation located and

doing business in St. Johns County, Florida and is a revoked viatical settlement provider.  It's license was revoked

by order of the Department entered on May 17, 2002.  Section 626.9915(1) Florida Statutes provides and requires

ATTACHMENT / EXHIBIT __A__

OR1797PG0744

that a revoked viatical insurance provider conclude its operations and cease and desist its business affairs at the time of the revocation. Because of the revocation, Future First can no longer legally solicit, negotiate, advertise or effectuate new viatical contracts and has to immediately proceed to conclude its affairs and the business it was transacting at the time of the revocation. The Department, pursuant to Florida Statute 626.9915, retains continuing jurisdiction over Future First until all its viatical contracts have been fulfilled, or canceled or have expired and its continued maintenance and service of those viatical policies is subject to the Department's approval.

According to the testimony and exhibits offered through Ms. Davis, Future First records revealed that Future First: (1) has continued to operate as usual since its license revocation rather than cease business and conclude its affairs as required pursuant to the Florida law and (2) has insufficient funds in its disclosed accounts to continue to maintain the premiums for the policies purchased by its investors. Additionally, Ms. Davis testified that a review of the records provided to her from Future First show that Future First collected approximately $400 million in capital from approximately 9400 investors and purchased approximately $318 million worth of insurance with approximatley 2600 policies.

Future First's records reveal that a small number of these policies are what the industry terms as "paid up policies", the others require premimums to be paid on a monthly or other regular basis in order for them to remain in force.

The Final Order issued by the Department on May 17, 2002 revoking Future First's license stated as follows:

> Respondent's, Future First Financial Group, Inc., license shall be revoked pursuant to Section 626.9914, Florida Statutes immediately upon entrance of this Final Order. As a condition of said revocation, Respondent must proceed immediately following effective date of the revocation, to conclude the affairs it is transacting under its license. The provider may not solicit, negotiate, advertise, or effectuate new contracts. The Department retains jurisdiction over the provider until all contracts have been fulfilled or canceled or have expired. Respondent may continue to maintain and service viatical policies subject to the approval of the Department.

The purchase agreement between Future First Financial Group, Inc. and each investor provided in pertinent part as follows: "Purchaser is not required to make any payment other than the purchase price" and " Trustee will pay insurance policy(ies) premiums until actual maturity(ies) out of Fidelity Viatical Special Trust Account." Ms. Davis testified that her review of the bank records show that there were insufficient funds in the Fidelity Viatical Special Trust Account to continue payment of the required premiums on all of the policies purchased by investors.

Subsequent to the Order of the Department revoking its license, Future First, entered into a service agreement with Life Settlement Service Corp to service the policies of Future First investors without the permission of the Department.  This agreement was entered into by Future First on the 21ˢᵗ day of June, 2002 and provided that Life Settlements would, among other things, review policies, monitor viators, conduct mailings, advertising, trustee provisions, legal referrals, file storage, medical life expectancy, and office space, all relative to the policies and investor activities for viatical settlement policy of Future First.  This is in clear contradiction of and an attempt to circumvent the Department's Order Revocation of May 17ᵗʰ provisions of Florida Statutes Chapter 626.

In addition, the documents provided by Future First and Life Settlements to the Department included two (2) pieces of correspondence, one dated July 8, 2002 and the other dated July 18, 2002.

In the July 8, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future First Financial Group, the letter provided in pertinent part,

> "The Fidelity Trust has advised Service Corp the Premium Escrow account has insufficient funds to make future premium payments on insurance policies.  Premium payments must be made according to policy requirements in order to insure the policy stays in force and in good standing. Service Corp. management and staff has six years of experience in servicing over 9000 investors monthly.
>
> These circumstances have a solution, but there is a very time sensitive deadline.  You must act now or your policy investment will lapse, resulting in an unnecessary loss.  The Trust account that disburses premium payments is prepared to facilitate all payments.
>
> Please provide a check payable to the *Fidelity Trust Special Account* for premium payments, and a check payable to *Life Settlement Service Corp* for servicing and monitoring.  See enclosed invoice."

The July 18, 2002 letter, forwarded by Life Settlements Service Corporation to investors of Future

3

O R 1 7 9 7 P G 0 7 4 6

First Financial Group, provided in pertinent part,

"Enclosed please find an invoice that requires your prompt attention. We understand that you may or may not have already received an invoice regarding this investment. We urge that you carefully review the enclosed statement regarding this investment **only**.

This may be one of several investments you have, which will result in several invoices for individual policies. If you have several policies that you have investments on, you will receive a statement for each of those as we find premiums due. Based on our current research, these premiums are due immediately in order to keep this policy active.

Pleased be advised that time is of the essence in order to keep the insurance policy active."

These letters clearly show that Future First was attempting to continue its viatical settlement obligations through a third party, namely Life Settlements, and was not concluding its affairs as ordered, but was soliciting additional funds through a third party from investors in contradiction of its agreement with those investors. The relationship between Future First and Life Settlement is not at an arm's length, and the agreement was approved by the Department.

From the testimony before this Court it is clear that (1) Future First had its license revoked for its failure to follow the laws and regulations regarding viatical insurance settlements by the Florida Department of Insurance on May 17, 2002; (2) the Order of revocation specifically provided that the "Respondent must proceed immediately.....to conclude the affairs it is transacting under its license" and that the "Department retains jurisdiction over the provider until all contracts have been fulfilled or canceled or have expired"; (3) the documents provided by Future First reveal and the testimony of Ms. Davis confirms that Future First did not attempt to "immediately" conclude the affairs it was transacting; (4) there are insufficient funds to insure payments for policy premiums for which Future First was responsible. (Parenthetically, in the event there are other funds available to Future First, those funds and the sources of those funds, were not disclosed in the documents provided to the Department.); (5) subsequent to the revocation of the license of Future First, Future First negotiated and executed a servicing contract with the Respondent, Life Settlement, and that members of the management of Future First positioned themselves in management positions for Life Settlement Services Corp; and (6) Life Settlement has solicited funds from Future

4

OR1797PG0747

First investors.

It is clear from the testimony presented by Ms. Davis and the documents and other evidence presented to the Court, that the investors of Future First are in jeopardy of losing their entire investment if Future First is allowed through Life Settlement to control the investments and the payment of the policy premiums. This Court will not allow Future First and its management team, who were responsible for putting its investors in a perilous financial situation, to again subject these same investors to possible further financial peril and losses by assuming control and soliciting funds through a newly formed corporation. Accordingly, this Court finds that it is evident under the circumstances of this case, considering all of the evidence presented, that a Conservator should be appointed for Future First Financial Group, Inc. in order to prevent irreparable loss, damage, or injury to investors in viatical and/or life settlement contracts effectuated by Future First Financial Group, Inc.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that David Levine, of Tew Cardenas Rebak Kellogg Lehman DeMaria Tague Raymond & Levine, L.L.P. (Conservator), is hereby appointed Conservator of Future First and of its assets and property as follows and with the following powers and authority:

1.    The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:

(a)    ll life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or Investors, or any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)

(b)    all assets of Future First including, but not limited to: computer hardware, databases, software, Investor and viator files relating to the Policies, all accounting and financial records including those pertaining to

premium payments and receipt and distribution of proceeds on the Policies, any deposits of cash, bonds or guarantees, filing cabinets, office supplies, any leases of office space, and telephone systems;

(c)   all premium reserve accounts, bank accounts, and any other depository accounts, wherever situated, into which Future First Investor funds or proceeds from Future First Policies have been deposited;

(d)   any trust, including The Fidelity Trust, and the assets thereof, as well as any predecessor or successor trust, or any affiliated trust set up pertaining to the business of Future First;

(e)   all rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures, and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of Future First, wherever situated; and

(f)   all other assets and property acquired with the proceeds of funds or assets of Future First, including The Fidelity Trust (Paragraphs 1(a)-(f) collectively referred to as Conservatorship Assets).

**IT IS FURTHER ORDERED** that the Conservator is given directions and authority to accomplish the following:

2.   To manage all Conservatorship Assets pending further action by this Court including, but not limited to, the evaluation of the Policies, and to take the necessary steps to protect the Investors' interests including, but not limited to, the liquidation, sale, or financing of the Policies to institutional buyers and/or financiers, and the assessment to Investors of future premium payments;

3.   to receive and collect any and all sums of money due or owing on the Policies to Future First or its agents whether the same are due or shall hereinafter become due and payable;

4.   to seek the return of any cash, bond, or guarantee on deposit with any regulatory agency or other entity on behalf of Future First or its agents;

5.   to make such payments and disbursements as may be necessary and advisable for the preservation of the Conservatorship Assets and as may be necessary and advisable in discharging his duties as

6

Conservator including, but not limited to, the timely payment from available funds or proceeds of financing of all premiums for Policies that have not yet matured;

      6.    to monitor the viators of the Policies by tracking the location of the viators and periodically checking the health of the viators;

      7.    to receive notice of the death of viators, file death claims on the viators, and collect the proceeds paid on the Policies as such mature;

      8.    subject to further order of the Court, to disburse to Investors and other creditors of Future First the proceeds paid on matured Policies, and the proceeds of other Conservatorship Assets collected by the Conservator;

      9.    to give notice to Investors, at their last-known mailing address, of this Conservatorship Order within thirty (30) days of the entry of this Order and to establish a method by which Investors may obtain periodic updates;

      10.    to retain or discharge attorneys, accountants, computer consultants, trustees, and other persons as may be advisable or necessary to the exercise of the duties of the Conservator subject to application to and approval by the Court;

      11.    to employ, compensate, or discharge office staff;

      12.    to open and inspect any and all mail and/or deliveries, and to notify any insurance company or third party administrator and the United States Postal Service to effect the forward delivery of any mail related to the Conservatorship Assets to a mail depository under the control of the Conservator;

      13.    to investigate the manner in which the affairs of Future First were conducted and institute such legal actions and legal proceedings, for the benefit and on behalf of Future First and Investors and other creditors, as the Conservator deems necessary against those individuals, corporations, partnerships, associations, and/or unincorporated organizations, which the Conservator may claim to have wrongfully, illegally, or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from Investors

in Future First including against Future First and the officers, directors, shareholders, employees, affiliates, and any persons acting in concert or participation with them, or against any transferees of monies or other proceeds directly or indirectly traceable from Investors to Future First; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute sections 726.101, et seq., or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

14.    to pursue any and all causes of action belonging to Future First;

15.    to present to this Court, within thirty (30) days of the date of this Order, a preliminary report reflecting the status of the Conservatorship, upon receipt of which the Court may institute such further proceedings as the Court deems advisable. Thereafter, unless otherwise ordered by the Court, commencing on January 15, 2003, the Conservator shall file quarterly reports with the Court apprising the Court of its progress;

16.    to defend, compromise, or settle legal actions, including the instant proceeding, wherein Future First or the Conservator is a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where Future First is a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of Future First, the Conservator may file appropriate pleadings in his discretion. The Conservator may waive any attorney-client, accountant-client, or any other privilege held by Future First;

17.    to assume control of, and be named as authorized signatory for, all accounts in any bank, brokerage firm, financial institution, or other depository which has possession, custody, or control of any assets or funds, or the proceeds, wherever situated, of Future First and, upon order of this Court, of any other entities;

18.    to make or authorize such payments and disbursements for customary operating expenses from the funds and assets taken into control or thereafter received by the Conservator, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging his duties as Conservator;

OR1797PG0751

19.   to sell assets or property including Conservatorship Assets, with the approval of the Court;

20.   to accept, continue, reject, cancel or negotiate modifications to excutory contracts and unexpired leases as allowed by the terms thereof or with Court approval;

21.   to exercise those other powers necessary to implement this Conservatorship pursuant to the orders and directives of the Court.

**IT IS FURTHER ORDERED** as follows:

22.   Future First and its directors, officers, shareholders, agents, and other persons who are in custody or control of Conservatorship Assets, including The Fidelity Trust and Life Settlement Services Corp. (Life Settlement), shall immediately execute such documents as may be necessary and take any other action as necessary to immediately transfer the ownership and beneficial rights to the Conservatorship Assets to the Conservatorship.

23.   All banks, brokerage firms, financial institutions, and other business entities and individuals which have possession, custody, or control of any assets, funds, or accounts, in the name of, or for the benefit of, Future First shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts. Such banks, brokerage firms, financial institutions, and other business entities and individuals shall also identify to the Conservator whether any additional accounts exist that appear to be related to or associated with Future First; and, if such accounts do exist, such banks, brokerage firms, financial institutions, and other business entities and individuals shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Conservator and in turning over and transferring to the Conservator any and all funds in such accounts and copies of all records and statements concerning such accounts.

24.   Unless and as authorized by the Conservator, no person or entity, including Future First and

its principals, shall take any action, nor purport to take any action, in the name of or on behalf of Future First.

25.    Future First, Life Settlement and The Fidelity Trust and their principals, officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Conservator including, if deemed necessary by the Conservator, appearing for deposition testimony and producing documents, upon five (5) business days notice (which may be sent by facsimile), and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Conservator of the funds, assets, premises, and choses in action described above.

26.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:

(a)    all Conservatorship Assets in the possession of or under the control of any one or more of them; and

(b)    all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.

27.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in active concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, life insurance companies, federal and state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of

this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator.

28.   The Conservator is authorized, without breaching the peace, to enter and secure any premises under the control of Future First or its agents, wherever located or situated, in order to take possession, custody or control of, or identify the location or existence of, any Conservatorship Assets.

29.   The Conservator and his professionals and consultants may apply to the Court for compensation, from time to time, in a reasonable sum to be determined by the Court and from such sources as approved by the Court and for reimbursement for reasonable expenses incurred by them in connection with their duties. The fees and expenses of the Conservator and for professionals and consultants shall have priority over any other claims made against Future First.

30.   Except by leave of Court during the pendency of this Conservatorship, all creditors and other persons or entities seeking money, damages or other relief from Future First or its agents, and all others acting on behalf of any such creditors or other persons or entities, including sheriffs, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees, are hereby stayed and restrained from doing any act or thing whatsoever to interfere with Future First or its agents, in an orderly transfer of the Conservatorship Assets or the Conservator or to the possession of or management by the Conservator of the Conservatorship Assets, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this Court over Future First.  This Conservatorship Order shall not stay or restrain any pending or future action whatsoever by any government agency or any representative on behalf of any government.  All sheriffs, marshals, police officers and other law enforcement officials shall assist the Conservatorship in enforcement of this court's orders.

31.   With the Court's prior approval, the Conservator is solely and fully authorized to proceed with

OR1797PG0754

any filing he may deem appropriate under the United States Bankruptcy Code as to Future First.

32.    Title to all property, real or personal, all contracts, rights of action and all books and records of Future First, wherever located within or without this state, is vested by operation of law in the Conservator until further order of the Court.

33.    Upon request by the Conservator, any company providing telephonic services to Future First shall provide a reference of calls from the number presently assigned to Future First to any such number designated by the Conservator or perform any other charges necessary to the conduct of the Conservatorship.

34.    Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Future First shall maintain such service and transfer any such accounts to the Conservator unless instructed to the contrary by the Conservator.

35.    The United States Postal Service is directed to provide any information requested by the Conservator regarding Future First, and to handle future deliveries of Future First's mail as directed by the Conservator.

36.    No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets of Future First to the Conservator's control without the permission of this Court.

37.    No bond shall be required in connection with the appointment of the Conservator and persons employed or retained by the Conservator.  Except for any act of gross negligence, the Conservator and his retained professionals and consultants shall not be liable for any loss or damage incurred by Future First or by the Conservator's officers, agents, or employees, or any other person, by reason of any act performed or omitted to be performed by them in conjunction with the discharge of their duties and responsibilities hereunder.

38.    Service of this Order shall be sufficient if made upon Future First's attorneys or principals by facsimile, hand-delivery, overnight courier, or United States mail.

39.    In the event that the Conservator discovers that funds of Future First or of its Investors have

12

been transferred to other persons or entities, the Conservator may apply to this Court for an Order giving the Conservator possession of such funds and, if the Conservator deems it advisable, extending this Conservatorship over any person or entity holding such funds.

40.   Immediately upon entry of this Order, the Conservator may take depositions upon oral examination of, and obtain the production documents from, parties and non-parties subject to five (5) business days notice.  In addition, immediately upon entry of this Order, the Conservator shall be entitled to serve interrogatories and requests for admission, which shall be responded to within twenty (20) calendar days of service.  Service of discovery requests shall be sufficient if made by facsimile or overnight courier; depositions may be taken by telephone or other remote electronic means.

41.   Life Settlement and The Fidelity Trust shall immediately provide the following information to the Conservator:

(a)   An accounting (including receipt and disbursement) of all funds received from Future First Investors, Future First, The Fidelity Trust, or Life Settlement, and all financial information and records pertinent thereto.

(b)   All records regarding the Policies, including servicing of or collections on the Policies.

42.   Until notified in writing by the Conservator, or until it properly exercises any contractual option to terminate servicing, Life Settlement shall continue servicing the Policies and provide daily written reports to the Conservator regarding that servicing.  All fees collected and to be collected for such servicing of the Policies shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

43.   Any and all death benefit payments on the Policies received by Life Settlement, The Fidelity Trust, or their successors or assigns shall be immediately deposited in a separate suspense account under the control of the Conservator pending further order of the Court.

44.   Because of their solititation of funds from Future First Investors and Future First until notified

OR1797P60756

otherwise in writing by the Conservator, Life Settlement. The Fidelity Trust, Future First, and/or Charles R. Sussman shall remit any monies from Investors, received pursuant to solicitation for premium payments, to the applicable insurer, and provide a daily written report thereof to the Conservator. Absent other agreement between the Conservator and Mr. Sussman/ Fidelity Trust, the Conservator shall assume premium payment responsibilities currently being dishcarged by Mr. Sussman/ Fidelity Trust by a date no later than twenty (20) days of the date of this Order. During this transition period Mr. Sussman/ Fidelity Trust will continue to be reasonably compensated for their services.

45. Life Settlements shall deliver to the Conservator all Policies and Policy account and payment information relative to the Policies, including identification of all investors, their addresses and other information necessary for the Conservator to determine the payment history, any current payments due, the name of the investors associated with each Policy of Future First.

46. Life Settlement, Future First, The Fidelity Trust, and Charles R. Sussman, shall immediately provide to the Conservator a copy of any notice, in their possession, custody, or control, from any insurer, of lapse, cancellation, or other indication of Policy termination, or of any notice suggesting an insurer's intent to terminate Policy coverage by reason of lapse, cancellation, or otherwise. For purposes of this Paragraph, immediate shall mean no later than twenty-four (24) hours after execution of this Order or receipt of such notice by the foregoing person or entities.

47. This Court retains jurisdiction over the parties and subject matter of this action to ammend or modify this Order to either enlarge or restrict the activities of the Conservator and for all other purposes.

**DONE AND ORDERED** this 9th day of August, 2002, at St. Augustine, St. Johns County, Florida.

**J. MICHAEL TRAYNOR**
**CIRCUIT COURT JUDGE**

Copies to:
Michael H. Davidson. Esq.
Christopher A. White. Esq.

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO. CA02-1598
DIVISION 55

```
Public Records of
St. Johns County, FL
Clerk# 02-047091
O.R. 1798 PG 426
03:50PM  08/13/2002
REC $0.00   SUR $0.00
```

STATE OF FLORIDA
DEPARTMENT OF INSURANCE,
    Petitioner,

vs.

FUTURE FIRST FINANCIAL GROUP, INC., and LIFE
SETTLEMENT SERVICES CORP.,
    Respondent.
_____/

## ORDER CORRECTING CLERICAL ERROR

    This matter came to be considered by the Court upon its own motion pursuant to Florida Rule of Civil Procedure 1.540 and the Court finding that the Order Appointing Conservator in the above styled matter which was entered by this Court on 9th day of August, 2002 contained a clerical error on page 4 and that same should be corrected, it is therefore

    **ORDERED AND ADJUDGED** that on page 4, in the second paragraph which begins with the words " These letters clearly show...", the last sentence should read as follows: " The relationship between Future First and Life Settlement is not at arm's length,  and the agreement was **not** approved by the Department.".

    **DONE AND ORDERED** this 13th day of August, 2002, at St. Augustine, St. Johns County, Florida.

                           **J. MICHAEL TRAYNOR**
                           **CIRCUIT COURT JUDGE**

Copies to:
Michael H. Davidson, Esq.
Christopher A. White, Esq.

15th August 2002

# DAVID M. LEVINE, CONSERVATOR
for Future First Financial Group, Inc.
Suite 2600
201 S. Biscayne Boulevard
Miami, FL 33131-4336
Telephone: (305) 536-1112
Facsimile: (305) 536-1116

January 24, 2003

**Via U.S. Mail and Facsimile (305) 577-7001**
Peter M. Kramer, Esq.
Steel Hector & Davis LLP
200 South Biscayne Blvd, Suite 4000
Miami, FL 33131-2398

RE:  Insurer: Sun Life Assurance Company of Canada
     Insured: Peter H. Storrs
     Policy / Contract No: 97851

Dear Peter:

On behalf of David M. Levine, Conservator, this office previously notified Sun Life Assurance Company of Canada ("Sun Life") of the death of the above insured. As you are representing Sun Life, we wanted to notify you that as Conservator, this office is in the process of completing the required claims package for the above-referenced policy. We hereby request that the processing of this claim be handled through our office in Jacksonville, FL at the following address: Future First Conservatorship, 1301 Riverplace Blvd., Suite 1700A, Jacksonville, FL 32207, telephone: (904) 398-3653. We request that all questions regarding the processing of this claim be directed to our Jacksonville office as well. Additionally, we request that the death benefit for this policy be sent to our Jacksonville, FL office upon completion of the processing of this claim, and not to the beneficiaries indicated in your records. The basis for our requests to process this claim and collect the death benefit is described below.

On August 9, 2002, an Order Appointing Conservator for Future First Financial Group, Inc., of Ponte Vedra, Florida ("Future First"), was entered by the 7th Judicial Circuit Court, In and For St. Johns County, Florida, by The Honorable J. Michael Traynor. A copy of the Order and the amendment thereto, issued on August 14, 2002, is attached for your reference.

The Order appointed David M. Levine as Conservator of Future First and authorized the Conservator to take immediate possession of all Conservatorship Assets. Specifically, Paragraph 1(a) of the Order states in pertinent part,

> 1.    The Conservator is hereby authorized and empowered to take immediate possession of all property and assets belonging to Future First of every kind whatsoever and wherever located including, but not limited to:

**ATTACHMENT / EXHIBIT _B_**

> (a) all life insurance policies and the proceeds therefrom (including death benefits) owned or held beneficially, directly or indirectly, by or for the benefit of Future First, The Fidelity Trust, and/or Investors, or any successors or assigns of the foregoing entities, that were purchased from the date of inception of Future First through the present date (Policies.)....

The above-referenced policy was held in the name of The Fidelity Trust for the benefit of Future First Financial Group investors. Accordingly, as a Conservatorship Asset, the Conservator is authorized by the Order to process the claim and collect the death benefit from this policy.

In addition to the language of Paragraph 1(a) of the Order, cited above, these requests are consistent with the provisions of Paragraphs 26 and 27 of the Order, which read as follows:

26.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies**, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, shall promptly deliver and surrender to the Conservator:

(a) all Conservatorship Assets in the possession of or under control of any one or more of them;
and
(b) all books and records of any kind pertaining to the Conservatorship Assets, to the Investors, or to the viators whose lives are insured by the Policies.

27.    All persons and entities, including Life Settlement, The Fidelity Trust, Future First, and their subsidiaries, affiliates, officers, directors, trustees, agents, servants, employees, attorneys, and all persons acting on their behalf, under their direction and control, and/or in concert or participation with them, and further including any banks or financial institutions, wherever chartered or located, **life insurance companies**, federal or state agencies, viators, viatical settlement providers, and viatical settlement brokers who receive actual notice of this Conservatorship Order, by personal service, facsimile transmission or otherwise, fully cooperate with and assist the Conservator and that they take no action, directly or indirectly, to hinder or obstruct the Conservator in the conduct of his duties or to interfere in any manner, directly or indirectly, with the custody, possession, or control exercised by said Conservator. (emphasis added.)

If you need any additional information, please do not hesitate to contact me at our Jacksonville office at the address above, or by telephone at (904) 398-3653, or at my Tallahassee office at (850) 841-7770.

Very truly yours,

John L. Brennan III

Cc:    Michael M. Bajalia, Esq.

JS 44 (Rev. 12/96)

**CIVIL COVER SHEET**

**03-20227**

**CIV-MARTINEZ**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
SUN LIFE ASSURANCE COMPANY OF CANADA,
**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
, Massachusetts(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
DAVID M. LEVINE, AS CONSERVATOR FOR FUTURE FIRST FINANCIAL GROUP, INC., et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (Miami-Dade, Florida)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Peter M. Kramer, Esq.
STEEL HECTOR & DAVIS LLP
200 S. Biscayne Boulevard, Suite 4000
Miami, FL  33131-2398    Telephone: (305) 577-2964

ATTORNEYS (IF KNOWN)

*Dade | 03-20227 civ-Martinez | Dube*

**MAGISTRATE JUDGE**
DUBÉ

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

**NIGHT BOX**
**FILED**

**JAN 30 2003**

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

- □ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- □ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | ☒ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒☒ 1 Original Proceeding
- □ 2 Removed from State Court
- □ 3 Remanded from Appellate Court
- □ 4 Reinstated or Reopened
- □ 5 Transferred from another district (specify)
- □ 6 Multidistrict Litigation
- □ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B □ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 362 Personal Injury - | B □ 620 Other Food & Drug | □ 423 Withdrawal | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | Med. Malpractice | B □ 625 Drug Related Seizure | 28 USC 157 | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault Libel & | □ 365 Personal Injury - Product Liability | of Property 21 USC 881 | | □ 450 Commerce/ICC Rates/etc. |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | □ 368 Asbestos Personal | B □ 630 Liquor Laws | **A PROPERTY RIGHTS** | □ 460 Deportation |
| □ 151 Medicare Act | □ 330 Federal Employers Liability | Injury Product Liability | B □ 640 R.R. & Truck | □ 820 Copyrights | □ 470 Racketeer Influenced and Corrupt Organizations |
| B □ 152 Recovery of Defaulted Student Loan | □ 340 Marine | **PERSONAL PROPERTY** | B □ 650 Airline Regs. | □ 830 Patent | □ 810 Selective Service |
| (Excl. Veterans) | □ 345 Marine Product Liability | □ 370 Other Fraud | B □ 660 Occupational Safety/Health | ☒☒ 840 Trademark | □ 850 Securities/Commodities/ Exchange |
| B □ 153 Recovery of Overpayment of Veteran's Benefits | □ 350 Motor Vehicle | □ 371 Truth in Lending | B □ 690 Other | **B SOCIAL SECURITY** | □ 875 Customer Challenge 12 USC 3410 |
| □ 160 Stockholders Suits | □ 355 Motor Vehicle Product Liability | □ 380 Other Personal Property Damage | **A LABOR** | □ 861 HIA (1395ff) | □ 891 Agricultural Acts |
| □ 190 Other Contract | □ 360 Other Personal Injury | □ 385 Property Damage Product Liability | | □ 862 Black Lung (923) | □ 892 Economic Stabilization Act |
| □ 195 Contract Product Liability | | | □ 710 Fair Labor Standards Act | □ 863 DIWC/DIWW (405(g)) | □ 893 Environmental Matters |
| | | | □ 720 Labor/Mgmt Relations | □ 864 SSID Title XVI | □ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | □ 730 Labor/Mgmt Reporting & Disclosure Act | □ 865 RSI (405(g)) | □ 895 Freedom of Information Act |
| □ 210 Landlord Condemnation | □ 441 Voting | B □ 510 Motions to Vacate Sentence | □ 740 Railway Labor Act | **FEDERAL TAX SUITS** | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| □ 220 Foreclosure | □ 442 Employment | | □ 790 Other Labor Litigation | A □ 870 Taxes (U.S. Plaintiff or Defendant) | □ 950 Constitutionality of State Statutes |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/ | **HABEAS CORPUS:** | A □ 791 Empl. Ret. Inc. Security Act | A □ 871 RSI - Third Party | □ 890 Other Statutory Actions A or B |
| □ 240 Torts to Landlord | | | | | |
| □ 245 Tort Product Liability | | | | | |
| □ 290 All Other Real Property | | | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 28 USC §1335

LENGTH OF TRIAL
_____ days estimated (for both sides to try entire case)

**VI. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION
□ UNDER F.R.C.P. 23

**DEMAND** interplead $314,000.00   CHECK YES only if demanded in complaint:
JURY DEMAND: □ Yes  ☒ No

**VII. RELATED CASE(S)** (See instructions):
IF ANY    None    JUDGE _____    DOCKET NUMBER _____

DATE  1/30/03    SIGNATURE OF ATTORNEY OF RECORD  *Peter M. Kramer*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

$150.00   876521
01/31/03